UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DANI RAY MALM,

                Petitioner,                Case No. 2:23-cv-174

v.                                  Honorable Jane M. Beckering

MICHAEL BROWN,

                Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Dani Ray Malm is incarcerated with the Michigan Department of Corrections at the Kinross Correctional Facility (CF) in Kincheloe, Chippewa County, Michigan. On July 25, 2012, following a three-day jury trial in the Leelanau County Circuit Court, Petitioner was convicted of three counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, for sexually abusing his daughter. (*See* ECF No. 10-7.). On August 27, 2012, the trial court sentenced Petitioner to concurrent prison terms of 18 to 40 years for each conviction. (*Id.*).

On September 5, 2023, Petitioner filed his habeas corpus petition raising the following four grounds for relief:

    I.      Mr. Malm was denied effective assistance of counsel under the Sixth Amendment to the United States Constitution when trial counsel failed to produce evidence to impeach witnesses with prior inconsistent statements.

    II.     Mr. Malm was denied the right to confront witnesses under the Sixth Amendment and due process of law under the Fourteenth Amendment to the United States Constitution when the prosecutor breached an authorized pretrial agreement.

III.     Mr. Malm was denied the right to effective assistance of trial counsel under the Sixth Amendment to the United States Constitution when counsel failed to protect Mr. Malm's Sixth Amendment right to confront witnesses and where counsel failed to object to the introduction of Dr. Smith's report.

IV.     Mr. Malm was denied the right to effective assistance of appellate counsel under the Sixth Amendment and the right to a full and fair appeal of right under the Fourteenth Amendment to the United States Constitution where [his] counsel omitted significant and obvious issues that were clearly stronger than the issues counsel presented.

(§ 2254 Pet., ECF No. 1, PageID.17–20.) Respondent contends that Petitioner's grounds for relief are in part unexhausted, in part procedurally defaulted, and in their entirety they are meritless. (ECF No. 11.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.     Factual Allegations

Jury selection for Petitioner's trial occurred on July 23, 2012. (Trial Tr. I, ECF No. 10-4.) Over the course of the next two days, the jury heard testimony from numerous witnesses, including the victim, the victim's biological mother, two ex-girlfriends of Petitioner's, law enforcement officers, a Children's Protective Services investigator for the Department of Human Services, a counselor from the victim's middle school, the victim's foster parent, and Petitioner himself. (Trial Tr. II and III, ECF Nos. 10-5, 10-6.) On July 25, 2012, after about an hour and 45 minutes of deliberation, the jury reached a guilty verdict. (Trial Tr. III, ECF No. 10-6, PageID.1337–1339.) Petitioner appeared before the trial court for sentencing on August 27, 2012. (ECF No. 10-7.)

Petitioner, with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals. Petitioner raised the following claims for relief in a counseled brief: (1) there was insufficient evidence to support his convictions; (2) the trial court denied Petitioner

2

a fair trial and his due process rights by erroneously allowing testimony pursuant to Rule 404(b) and Mich. Comp. Laws § 768.27a, as well as by violating double jeopardy protections by increasing Petitioner's sentence at a later date by "ordering payment of attorney fees and ordering lifetime electronic monitoring"; (3) Petitioner was sentenced based upon inaccurate information; (4) Petitioner is entitled to resentencing after the guidelines are correctly scored; and (5) the prosecution's actions denied Petitioner a fair trial and his due process rights. (ECF No. 10-24, PageID.1655–1657.) Petitioner raised the following additional claims in a *pro per* supplemental brief: (1) the trial court denied Petitioner a fair trial and due process by refusing to grant a continuance to allow witnesses to testify on Petitioner's behalf; (2) the prosecutor denied Petitioner a fair trial and due process by not demonstrating due diligence in attempts to produce the witnesses endorsed on the information; (3) Petitioner was prejudiced by the prosecution's failure to produce the endorsed witnesses at trial; (4) the trial court erred by allowing examination testimony from the physician who examined the victim to be read by the jury, violating Petitioner's Confrontation Clause rights; and (5) counsel rendered ineffective assistance. (*Id.*, PageID.1725–1727.)

On April 1, 2014, the Michigan Court of Appeals affirmed Petitioner's convictions and sentences but vacated the trial court's "amended order to remit prisoner funds." *People v. Malm*, No. 312486, 2014 WL 1320237, at *1 (Mich. Ct. App. Apr. 1, 2014). The court of appeals did so because the trial court never actually imposed attorney fees on Petitioner. *Id.* at *6.

Petitioner subsequently sought leave to appeal to the Michigan Supreme Court. On October 28, 2014, the supreme court entered an order noting that it was holding Petitioner's application for leave to appeal in abeyance pending a decision in *People v. Lockridge. See People v. Malm*, 854 N.W.2d 738 (Mich. 2014). A year later, the supreme court reversed in part the judgment of the court of appeals and remanded the matter to the trial court "to determine whether the court would

3

have imposed a materially different sentence under the sentencing procedure described in *Lockridge.*" *See People v. Malm*, 870 N.W.2d 705 (Mich. 2015). The supreme court explicitly directed the trial court to follow the procedures set forth in Part VI of *Lockridge. Id.* Specifically, the supreme court stated:

> If the trial court determines that it would have imposed the same sentence absent the unconstitutional constraint on its discretion, it may reaffirm the original sentence. If, however, the trial court determines that it would not have imposed the same sentence absent the unconstitutional constraint on its discretion, it shall resentence the defendant.

*Id.* The supreme court denied leave to appeal in all other respects. *Id.*

Review of the trial court's publicly available docket suggests that the trial court did not pursue either option. *People v. Malm*, No. 2012001770FC (Leelanau Cnty. Cir. Ct.), https://criminalrecords.gtcountymi.gov/iprodp/cccriminad.cgi?casekey=00000197397 (visited Dec. 5, 2024). There is no record of any action by the trial court until Petitioner, with the assistance of counsel, filed a motion for relief from judgment, pursuant to Michigan Court Rule 6.502, eighteen months after the Michigan Supreme Court's remand order. *Id.* In that motion, Petitioner raised three claims of ineffective assistance of trial counsel and one claim of ineffective assistance of appellate counsel, none of which match squarely with Petitioner's habeas grounds. (ECF No. 10-11, PageID.1385.) The trial court denied the motion on May 19, 2017. (ECF No. 10-13.)

On August 21, 2020, Petitioner filed a *pro per* successive Rule 6.502 motion. (ECF No. 10-14.) In that motion, Petitioner asserted that trial counsel was ineffective for failing to impeach witnesses with their prior inconsistent statements;[1] that a breach of a pretrial agreement violated

---

[1] This argument is a significant elaboration on the argument Petitioner presented in his *pro per* supplemental brief:

> Counsel failed to check credibility of the witnesses and challenge their testimony. Counsel[']s reasoning was not to upset the witnesses because he had to maintain a

Petitioner's Sixth Amendment Confrontation Clause rights, as well as his Fourteenth Amendment due process rights; counsel was ineffective for failing to protect Petitioner's Confrontation Clause rights and failing to object to the admission of Dr. Smith's report;[2] (4) the trial court had repeatedly failed to comply with the Michigan Supreme Court's order regarding resentencing; and (5) appellate counsel was ineffective for failing to raise issues that were clearly stronger than the ones presented. (*Id.*) The trial court denied Petitioner's successive Rule 6.502 motion on August 28, 2020. (ECF No. 10-16.)

Petitioner subsequently sought leave to appeal the denial of his successive Rule 6.502 motion to the Michigan Supreme Court. In an order entered on January 19, 2021, the court of appeals remanded the matter in part to the trial court. (ECF No. 10-26, PageID.1767.) The court

---

working relationship with the judge. Defendant had many questions that counsel refused to acknowledge. Defense counsel['']s performance had fallen below that which would be expected of an attorney of ordinary training and skill in criminal law.

(Pet'r's *Pro Per* Supplemental Br., ECF No. 10-24, PageID.1756–1757.) The Michigan Court of Appeals rejected Petitioner's four-sentence argument with a two-sentence analysis: "Regarding defendant's argument that counsel refused to ask the witnesses many questions defendant had posed, he does not indicate what counsel should have asked. We will not engage in conjecture." *Malm*, 2014 WL 1320237, at *8. Petitioner's cursory argument on direct appeal is certainly not a fair presentation of the multi-page argument he raised in his successive motion for relief from judgment or his habeas brief. *See* (ECF No. 10-15, PageID.1454–1462; ECF No. 6, PageID.103–114).

[2] This is a variant of the argument Petitioner raised on direct appeal in his *pro per* supplemental brief:

Had Dr. Smith been present at trial the outcome may have been different. Dr. Smith['']s medical report revealed "There is no obvious sca[r]ring, tearing, or redness of her hymen. The visualized portions of the vagina appear normal." With [the victim's] petite size this would be the important information.

(Pet'r's *Pro Per* Supplemental Br., ECF No. 10-24, PageID.1755.) On direct appeal, however, Petitioner did not reference the Confrontation Clause or counsel's failure to object to admission of the report.

of appeals directed the trial court "address, either in writing or on the record, [Petitioner's] assertion that the circuit court failed to comply with our Supreme Court's 2015 remand order." (*Id.*) The court of appeals dismissed Petitioner's application for leave to appeal in all other respects.[3] (*Id.*)

The record reflects that the trial court conducted a resentencing on May 3, 2021. (ECF No. 10-17.) The trial court, however, did not address the *Lockridge* procedure as directed. Instead, the trial court resentenced Petitioner to a longer sentence—22 to 40 years for each conviction, with credit for 3,279 days served. (*Id.*, PageID.1498.)

Petitioner, through counsel, appealed his new sentence to the Michigan Court of Appeals, raising numerous claims for relief. (ECF No. 10-28, PageID.2197.) While that appeal was pending, Petitioner filed his first federal habeas corpus petition. *See Malm v. Brown*, No. 2:22-cv-169, 2023 WL 2494395, at *3 (W.D. Mich. Mar. 14, 2023). On February 16, 2023, the Michigan Court of Appeals vacated Petitioner's new sentences and remanded for further proceedings. *See People v. Malm*, No. 357503, 2023 WL 2051349, at *1 (Mich. Ct. App. Feb. 16, 2023). In doing so, the court of appeals noted that "it [was] clear that the trial court failed to comply with our remand order and again appears to have failed to comply with our Supreme Court's 2015 remand order." *Id.* Shortly thereafter, this Court dismissed Petitioner's first § 2254 petition without prejudice, noting that the "habeas statutes d[id] not permit the Court any basis to grant relief given the current procedural posture of Petitioner's case in the state courts." *Malm*, 2023 WL 2494395, at *2.

On May 1, 2023, the trial court conducted a resentencing. (ECF No. 10-21.) In a disposition report, the trial court noted: "Defendant [d]enies re-sentencing. An Amended Judgment of

---

[3] While the sentencing remand was proceeding, on April 9, 2021, Petitioner also filed an application for leave to appeal the court of appeals' order. The supreme court denied leave to appeal by order entered September 8, 2021. *People v. Malm*, 963 N.W.2d 357 (Mich. 2021).

Sentence with the Same Terms as the 2012 Judgment of Sentence with Credit for 3,899 [d]ays [w]ill be [e]ntered." (*Id.*) The amended judgment of sentence was entered on May 22, 2023. (ECF No. 10-23.) This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to

an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.  Discussion

### A.  Exhaustion and Procedural Default

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to

all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

A petitioner has fairly presented his claims when he identifies the constitutional right that he claims has been violated and the particular facts which supported his claims to the state courts. *Onifer v. Tyszkiewicz*, 255 F.3d 313, 315 (6th Cir. 2001), *cert. denied*, 534 U.S. 930 (2001). Fair presentation has a substantive component and a procedural component. With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern. *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993); *see also Picard*, 404 U.S. at 277–78. With regard to procedure, the fair presentation requirement is not satisfied when a claim is presented in a state court in a procedurally inappropriate manner that renders consideration of its merits unlikely. *Olson v. Little*, 604 F. App'x 387, 402 (6th Cir. 2015) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989) ("[W]here the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor,' . . . does not, for the relevant purpose, constitute 'fair presentation.'")); *see also Ogle v. Ohio Dep't of Rehab. & Corr.*, No. 17-3701, 2018 WL 3244017, at *2 (6th Cir. Feb. 27, 2018); *Stokes v. Scutt*, 527 F. App'x 358, 363–64 (6th Cir. 2013).

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). In the petition, Petitioner claimed that he had raised each of his habeas issues in his

10

second motion for relief from judgment.[4] (Pet., ECF No. 1, PageID.6–11.) Examination of the state court record confirms Petitioner's claim. He raised his four habeas grounds in the motion for relief from judgment and his appeals of the denial of that motion. (Pet'r's Mot. for Relief from J., ECF No. 10-14; Pet'r's Appl. for Leave to Appeal to Mich. Ct. App., ECF No. 10-26, PageID.1770–1794; Pet'r's Appl. for Leave to Appeal to Mich., ECF No. 10-27, PageID.1935–1957.)

By order entered August 28, 2020, the Leelanau County Circuit Court refused to consider Petitioner's motion under Mich. Ct. R. 6.502(G)(2) because it was successive or perhaps because Petitioner did not show good cause for failing to raise the issues previously under Mich. Ct. R. 6.508(D)(3). (ECF No. 10-16, PageID.1487.)[5] The prohibition against successive motions is not absolute:

> A defendant may file a second or subsequent motion based on any of the following:
>
> (a) a retroactive change in law that occurred after the first motion for relief from judgment was filed,
>
> (b) a claim of new evidence that was not discovered before the first such motion was filed, or
>
> (c) a final court order vacating one or more of the defendant's convictions either described in the judgment from which the defendant is seeking relief or upon which the judgment was based.

---

[4] Although Petitioner alleges that he raised his four habeas issues for the first time in his second motion for relief from judgment, it appears that he raised habeas ground II in his *pro per* supplemental brief on direct appeal. The Michigan Court of Appeals notes that Petitioner "argues that he was deprived his Sixth Amendment right to confront and cross-examine the witnesses[, specifically Dr. Smith,] against him." *People v. Malm*, No. 312486, 2014 WL 1320237, at *7 (Mich. Ct. App. Apr. 1. 2014.) Because at least some portion of some of Petitioner's habeas grounds may be exhausted, the Court will also address the claims on their merits.

[5] The trial court addressed Petitioner's motion in two ways. First, the court noted that Petitioner's alleged "new" evidence was not newly discovered under Mich. Ct. R. 6.508(G)(2). (ECF No. 10-16, PageID.1487.) Second, the court determined that the motion alleged grounds for relief that could have been raised, but were not raised, on appeal or in Petitioner's first motion for relief from judgment, and Petitioner had failed to show good cause for the omissions under Mich. Ct. R. 6.508(D)(3). (*Id.*)

Mich. Ct. R. 6.508(G)(2). Moreover, the state court may waive the successive motion bar "if it concludes that there is a significant possibility that the defendant is innocent of the crime." *Id*.

The prohibition against raising claims in a post-judgment motion that a defendant could have raised before is likewise not absolute:

> The court may not grant relief to the defendant if the motion . . .
>
>> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>>
>>> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
>>>
>>> (b) actual prejudice from the alleged irregularities that support the claim for relief.

Mich. Ct. R. 6.508(D). In this context, as well, the state court "may waive the 'good cause' requirement . . . if it concludes that there is a significant possibility that the defendant is innocent of the crime." *Id*.

In his successive motion brief, Petitioner argued he was entitled to file a successive motion based on "new evidence" and "actual innocence," arguably implicating the prohibitions of Rule 6.502(G) and 6.508(D)(3). (Pet'r's Mot. for Relief from J., ECF No. 10-15, PageID.1451–1453.) The circuit court judge was not convinced (Leelanau Cnty. Cir. Ct. Order, ECF No. 10-16); neither were the appellate courts, (Mich. Ct. App. Order, ECF No. 10-26, PageID.1767; Mich. Order, ECF No. 10-27, PageID.1934).

Petitioner challenged both paths to denial identified by the trial court—6.502(G) and 6.508(D)(3)—when he sought leave to appeal to the Michigan Court of Appeals. (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 10-26, PageID.1777–1779.) The appellate court, however, focused on the successive nature of the motion, not the lack of good cause, in denying the application for leave to appeal. (ECF No. 10-26, PageID.1767.) When Petitioner sought leave

in the Michigan Supreme Court, he raised "newly discovered evidence" and "actual innocence." (Pet'r's Mich. Appl. for Leave to Appeal, ECF No. 10-27, PageID.1946–1948; Pet'r's Br. in Support of Mich. Appl. for Leave to Appeal, ECF No. 10-27, PageID.2061–2063.) But, Petitioner also raised "good cause" and "actual prejudice." (Pet'r's Br. in Support of Mich. Appl. for Leave to Appeal, ECF No. 10-27, PageID.2090–2091.) The Michigan Supreme Court focused only on 6.508(D) when it denied leave to appeal. (ECF No. 10-27, PageID.1934.)

In *Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010), the Sixth Circuit Court of Appeals concluded that Michigan appellate court form orders that deny relief "citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or denial of relief on the merits[.]" *Id*. at 291. Thus, such an order is "unexplained." *Id*. In *Ylst v. Nunnemaker*, the Supreme Court applied a presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." 501 U.S. 797, 803 (1991). Although the Michigan Supreme Court order and the trial court's order might be considered ambiguous, the Michigan Court of Appeals order is not. That order is the last reasoned state court judgment rejecting Petitioner's present habeas claims.

The determination as to whether Petitioner provided "new evidence" or established his "actual innocence" under Rules 6.502(G) is purely a matter of state law. Similarly, the state court's determination as to whether Petitioner established "good cause" for his failure to raise the issues in his direct appeal or prior motion for relief from judgment is purely a matter of state law. Any error by the Michigan courts in applying its own rules to Petitioner's motion for relief from judgment is an issue of state law that is not cognizable on federal habeas review. *See Simpson v. Jones*, 238 F.3d 399, 406–07 (6th Cir. 2000) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Smith v. Phillips*, 455 U.S. 209, 221 (1982)). The extraordinary remedy of habeas corpus lies only

for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle*, an inquiry whether the trial court's determination was proper under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." 502 U.S. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst*, 501 U.S. at 801; *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether (1) the petitioner failed to comply with an applicable state procedural rule, (2) the state court enforced the rule so as to bar the claim, and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436–37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

Here, Petitioner admits he failed to raise his four habeas grounds until he raised them in his successive motion for relief from judgment.[6] The procedural default bar, however, applies only if Rule 6.502(G) is an adequate and independent state law procedural rules. A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the

---

[6] Petitioner states that he raised habeas ground I for the first time in his August 21, 2020, motion for relief from judgment. (Pet., ECF No. 1, PageID.6.) He states the same for habeas grounds II, III, and IV. (*Id*., PageID.7–11.)

time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)). In assessing how "firmly" a state procedural rule has been established, the critical inquiry is whether, viewed from the time of the petitioner's later significant actions or inaction, the petitioner could be deemed to have been apprised of the procedural rule's existence. *Luberda v. Trippett*, 211 F.3d 1004, 1006–07 (6th Cir. 2000). Because Rule 6.502(G) was enacted in 1995 and Petitioner's conviction and appeals took place more than ten years thereafter, Rule 6.502(G) was a "firmly established" procedural rule for purposes of Petitioner's action. *See Luberda*, 211 F.3d at 1007; *Rogers*, 144 F.3d at 994. Accordingly, the Court concludes that Petitioner has procedurally defaulted his federal habeas claims.

The same result would follow if the Court considered failure to establish good cause and prejudice under Rule 6.508(D)(3) as the source of the procedural default. The Sixth Circuit has stated that Rule 6.508(D)(3) was promulgated in 1989 and that is has been firmly established and regularly followed at least since 1990. *Jones v. Toombs*, 125 F.3d 945, 946–47 (6th Cir. 1997), *cert. denied,* 521 U.S. 1108 (1997).

If Petitioner procedurally defaulted his federal claims in state court, he must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551–52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would

have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner suggests that he has shown good cause for failing to raise these issues in his direct appeal or his first motion for relief from judgment. To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). Petitioner claims that his "good cause" is the ineffective assistance of his counsel. That might provide cause for failing to raise the issues on direct appeal; but it would not provide cause for failing to raise the issues in Petitioner's first motion for relief from judgment. In *Coleman v. Thompson*, the Supreme Court stressed that "a petitioner cannot claim constitutionally ineffective assistance of counsel" in proceedings in which "[t]here is no constitutional right to an attorney," such as "state post-conviction proceedings." 501 U.S. at 752. The Sixth Circuit Court of Appeals has explained:

> As a general principle, counsel is an agent that a client controls, so mere "[a]ttorney ignorance or inadvertence" is not normally considered "external" to a petitioner and thus will not excuse procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 753–54 (1991). Ineffective assistance of counsel can constitute cause to excuse a procedural default, however, in some circumstances. Typically, these circumstances arise only when a petitioner has a Sixth Amendment right to an attorney, such as at trial or on direct review. In these instances, the default caused by the deficiency in counsel's representation is imputed to the state and thus deemed external to the petitioner himself. *Id.* at 754. During postconviction proceedings, however, the general rule is that ineffective assistance of counsel cannot establish cause to excuse a procedural default because there is no constitutional right to an attorney in such proceedings. *Id.* Instead, petitioners are forced to "bear the risk" of any attorney errors that may occur during collateral review. *Id.* at 753.

*Young v. Westbrooks*, 702 F. App'x 255, 259–60 (6th Cir. 2017) (parallel citations omitted), *cert. denied sub nom. Young v. Mays*, 583 U.S. 1096 (2018). Thus, typically, alleged attorney error in

state post-conviction proceedings "cannot constitute cause to excuse [a] default in federal habeas." *Coleman*. 501 U.S. at 757.

The Supreme Court has recognized some exceptions, for example, where a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 17 (2012)). In *Taylor v. McKee*, 649 F.3d 446 (6th Cir. 2011), the Sixth Circuit held that *Martinez* would not apply in Michigan since defendants in Michigan may bring ineffective assistance of counsel claims on direct appeal. *Id.* at 452 (citing *People v. Taylor*, 737 N.W.2d 790, 796 (Mich. Ct. App. 2007)).

The Supreme Court recognized another exception in *Maples v. Thomas*, 565 U.S. 266 (2012):

> Apart from the *Martinez-Trevino* line of cases, the Supreme Court has described a second scenario where counsel's behavior during postconviction proceedings might provide the requisite cause to excuse the procedural default of a petitioner's claims. In *Maples v. Thomas*, the Court held that a petitioner had shown cause after his attorneys of record abandoned him without warning and caused him to miss the deadline to file a postconviction appeal. *Maples*, 565 U.S. at 289.
>
> *   *   *
>
> The Supreme Court . . . distinguished *Coleman* by drawing a line between claims of attorney error on the one hand, governed by *Coleman*, *Martinez*, and *Trevino*, and claims of attorney abandonment on the other. *Id.* at 282. Notwithstanding the *Martinez-Trevino* exception, while a petitioner is ordinarily bound by postconviction counsel's negligence—"however egregious"—, a "markedly different situation" arises "when an attorney abandons his client without notice." *Id.* at 281–82. In the former scenario, counsel still acts as the petitioner's agent, just not effectively. In the latter case, the principal-agent relationship is severed, and "a client [cannot] be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him." *Id.* at 283. Thus, when "extraordinary circumstances" exist and an attorney ceases to operate as a petitioner's agent "in any meaningful sense of that word," the petitioner has been abandoned, and the procedural bar to federal habeas review may be lifted.

17

> According to the Court, Maples's situation was indeed "extraordinary." He "lacked the assistance of any authorized attorney" during the 42-day postconviction appeal window. *Id*. at 288–89. The conduct of Maples's attorneys went beyond negligence—they had "severed their agency relationship with Maples" when they assumed new employment, which by law "disabled them from continuing to represent Maples." *Id*. at 283–84 (citing Restatement (Second) of Agency § 112 (1957)).

*Young*, 702 F. App'x at 261 (parallel citations omitted).

Petitioner has not directly addressed abandonment here. Instead, he focuses on a claim that retained counsel for Petitioner's first motion for relief from judgment provided ineffective assistance by "filing a 'canned' brief that overlooked various issues, reflecting a total failure to provide competent representation." (Pet'r's Br., ECF No. 10-15, PageID.1452.) Ineffective assistance of post-conviction counsel is not sufficient to serve as cause. *See, e.g.*, *Myers v. Osborne*, No. 17-5284, 2018 WL 4215638, at *3 (6th Cir. Apr. 12, 2018) (noting that "[e]ven if [post-conviction counsel] did not perform satisfactorily, that would not constitute abandonment under *Maples*"). What Petitioner describes is "claim abandonment," not "client abandonment." The Sixth Circuit has concluded that "*claim* abandonment—while perhaps ineffective assistance—is not the same as *client* abandonment." *Young*, 702 F. App'x at 262. The court concluded that only the latter type of abandonment could serve as good cause. *Id*.

The only excuse Petitioner offers for failing to raise his habeas issues in his first motion for relief from judgment is his counsel's ineffective assistance. Under the circumstances Petitioner describes, that is not sufficient cause for his procedural default. Where a petitioner fails to show cause, the Court need not consider whether he has established prejudice. *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985). Accordingly, Petitioner's habeas claims are barred by his procedural default.

Absent demonstration of cause and prejudice for his failure to exhaust these issues in the state courts, Petitioner may only avoid the procedural default bar by showing that he is actually

innocent. In *Schlup*, the Supreme Court explained this exception to the procedural default bar as follows:

> Because Schlup has been unable to establish "cause and prejudice" sufficient to excuse his failure to present his evidence in support of his first federal petition, *see McCleskey v. Zant*, 499 U.S. 467, 493–494 (1991), Schlup may obtain review of his constitutional claims only if he falls within the "narrow class of cases . . . implicating a fundamental miscarriage of justice," *id.*, at 494. Schlup's claim of innocence is offered only to bring him within this "narrow class of cases."

*Id.* at 314–15 (parallel citations and footnote omitted).

"'[A]ctual innocence' means factual innocence." *Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to make a showing of actual innocence under *Schlup*, a petitioner must present new evidence showing that "it is more likely than not that no reasonable juror would have convicted [the petitioner.]" *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup*, 513 U.S. at 327) (addressing actual innocence as an exception to procedural default).

Petitioner purports to offer "new evidence" as follows:

[A] trustworthy eyewitness account by Mrs. Knowles indicating that [the victim] did have a harmful reaction to bubble bath at a young age which caused swelling, redness and urinary tract infections on her vagina.[7]

[Evidence that] Ms. Cooper was fully aware of [the victim's bubble bath reaction] situation, yet insisted [it was] sexual abuse.

Exculpatory scientific evidence by Dr. Howard Bennett on the reactions that bubble baths cause [and that such reactions] are identical to what the R.N. reportedly observed and noted . . . .[8]

New reliable evidence by the Mayo Clinic on child sexuality, that reveals preschool children have a natural sexual curiosity that manifests itself in various ways. In addition to self-stimulation, many preschool children's curiosity may involve a parent, and these behaviors are normal.[9]

---

[7] (Aff. of Dorothy Knowles, ECF No. 6-2, PageID.156).

[8] (Internet Article, ECF No. 6-2, PageID.159).

[9] (Printed Excerpts, ECF No. 6-2, PageID.166–167).

19

(Pet'r's Br., ECF No. 6, PageID.100–101.) All of Petitioner's "new evidence" relates to a sexual assault for which he was not charged. The prosecutor offered Rule 404(b) evidence regarding an incident when the victim was only four or five-years-old. (Hr'g Tr., ECF No. 10-3, PageID.734–742.) Petitioner argues that the rash/inflammation on the victim's genitals was the result of bubble bath, not Petitioner's digital assault. The victim testified otherwise. (Trial Tr. II, ECF No. 10-5, PageID.927–929, 953–955, 1007–1008.)

Whether or not any of this evidence was new and whether or not any of it was available at the time of Petitioner's trial, none of it bears directly on Petitioner's guilt or innocence of the criminal sexual conduct charged. That conduct occurred years after the incident that is the focus of Petitioner's "new evidence." Moreover, at best, Petitioner's "new evidence" provides only a possible alternative explanation for the victim's rash when she was four or five-years-old. It does not establish that Petitioner did not sexually assault the victim when she was in her teens. Neither Dr. Bennett, the Mayo Clinic, nor Mrs. Knowles have anything to say about the crimes Petitioner was charged with. Under the circumstances, Petitioner offers no basis for the Court to conclude that "it is more likely than not that no reasonable juror would have convicted [the petitioner.]" *McQuiggin*, 569 U.S. at 399. Accordingly, the Court finds that Petitioner has failed to demonstrate that he is actually innocent, and his procedural default bars the Court's consideration of Petitioner's habeas claims.

### B.    Petitioner's Habeas Claims on the Merits

Although Petitioner's procedural default bars consideration of his habeas claims, the Court will alternatively address them on the merits.

### 1.    Ground II—Breach of Pretrial Agreement

As his second ground for relief, Petitioner contends that the prosecutor violated his Sixth Amendment right to confront witnesses and his due process rights by "breach[ing] an authorized

pretrial agreement." (§ 2254 Pet., ECF No. 1, PageID.18.) Petitioner sets forth that prior to trial, the trial court authorized an agreement that Petitioner "would have the ability to confront Dr. Smith, the Examining Physician[,] in a video deposition." (*Id.*) Petitioner faults the prosecutor for not subpoenaing Dr. Smith for the deposition. (*Id.*) He alleges further that, "under false pretenses, the [p]rosecutor deliberately introduced a fraudulent stipulation at trial[] to admit Dr. Smith's written reports to the jury as substantive evidence of guilt." (*Id.*)

The record reflects that the trial court held a hearing on June 20, 2012, during which the availability of Dr. Smith was addressed. (ECF No. 10-2.) At that hearing, the prosecution noted that Dr. Smith had a vacation scheduled for the time when trial was scheduled. (*Id.*, PageID.713.) The court suggested that Dr. Smith undergo a "de bene esse deposition" that could be played to the jury. (*Id.*, PageID.714.) The trial court also indicated that the trial could be moved up in time. (*Id.*) Petitioner's counsel noted that "[i]f the options are commence the trial early or do the deposition, I guess I would prefer to do the deposition, your Honor." (*Id.*, PageID.715.) The prosecution subsequently raised the possibility of a Confrontation Clause issue on appeal. (*Id.*, PageID.717.) The trial court indicated that Petitioner could "come and attend the video deposition and observe it and be with his attorney so he could help his attorney in designing the proper way to question and cross-examine Dr. Smith." (*Id.*, PageID.717–718.)

The trial court again addressed the availability of witnesses, including Dr. Smith, at a hearing on July 17, 2012. (ECF No. 10-3.) Defense counsel indicated that trial should be adjourned given the unavailability of several witnesses, including Dr. Smith. (*Id.*, PageID.756.) the prosecution indicated that Dr. Smith had been served with a subpoena. (*Id.*, PageID.757.) The trial court then stated:

> What about now, Dr. Smith, the two of you previously agreed you could do a video dep, she's not critical. All she's going to—as I understand it, all she's going to

testify to is the physical examination of [the victim] was normal and did not have anything that would corroborate or contradict the story [the victim] told.

(*Id.*, PageID.765.) The parties indicated that representation was correct. (*Id.*)

During the afternoon of the second day of trial, the prosecutor represented that he would be submitting medical records and letters prepared by Dr. Smith "by stipulation in lieu of her testimony. (Trial Tr. II, ECF No. 10-5, PageID.1112.) Defense counsel indicated that statement was correct, and that he had spoken to Dr. Smith and that the information she provided is what she had provided to the prosecution and defense counsel. (*Id.*) Specifically, the prosecutor indicated that he would be admitting an office report and a July 19, 2012, letter, along with Dr. Smith's curriculum vitae. (*Id.*, PageID.1114.) Those documents were then admitted at the end of the second day of trial. (*Id.*, PageID.1139–1140.)

Petitioner challenged the failure of the prosecution to subpoena Dr. Smith, as well as the admission of Dr. Smith's report, in his *pro per* supplemental brief on his first appeal. The Michigan Court of Appeals rejected his claims, noting that Petitioner had "provided no affidavit or anything else from any of [the identified witnesses] to indicate that they would have testified as [Petitioner] asserts." *Malm*, 2014 WL 1320237, at *7. The court of appeals also noted that because Petitioner "stipulated to the admission of the report[, he could not] stipulate to a matter and then argue on appeal that there was error." *Id.*

The documents in question were made part of the appellate record on direct appeal. In Dr. Smith's office note, she indicated, in part:

> [The victim's] general physical exam was unremarkable. Specific exam related to abuse showed to unusual skin lesions. She points to her breasts as touched. They are Tanner stage III. She points to her genitalia as touched. Genitalia was examined in a frog-leg and on all-fours position. Labial traction was used and an otoscope was used. . . . [The victim] h as normal appearing genitalia. Her pubic hair is shaved, although it appears in a typical anatomic distribution. She has obvious estrogen effect of her hymen. There is no obvious scarring, tearing or redness of her hymen. The visualized portions of the vagina appear normal. Rectum appears normal.

22

(ECF No. 10-24, PageID.1637.) Dr. Smith's assessment was: "Clear verbal statements of receptive penial/oral, penile/vaginal contact with a normal physical exam." (*Id.*) In the July 19, 2012, letter, Dr. Smith noted, in part: "Her physical exam was normal, which is consistent with her verbal statements. In cases of sexual abuse, a normal physical exam can neither confirm abuse nor disprove abuse." (*Id.*, PageID.1641.)

As an initial matter, to the extent Petitioner's challenges the trial court's admission of these documents pursuant to stipulation, the extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle*, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." 502 U.S. 62, 67–68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright*, 464 U.S. at 84 (1983); *see also Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Thus, any conclusion by the state courts that these documents were properly admitted under state law is axiomatically correct.

It is possible that an evidentiary ruling—even a ruling that is axiomatically correct under state law—still violates due process. State-court evidentiary rulings can rise to the level of due process violations if they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001);

*Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue"). Petitioner, however, has not met this difficult standard.

Petitioner challenges the admission of the report prepared by Dr. Smith as a violation of the Sixth Amendment's Confrontation Clause. The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause, therefore, prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004).

Not every out-of-court statement at trial, however, implicates the Confrontation Clause. As the Supreme Court stated in *Crawford*:

> The text of the Confrontation Clause . . . applies to "witnesses" against the accused—in other words, those who "bear testimony." 2 N. Webster, An American Dictionary of the English Language (1828). "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Ibid.* An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.

*Id.* at 51. The *Crawford* Court had no need to decide whether the Confrontation Clause applies to nontestimonial statements, though the Court suggested, in *dicta*, that the clause does not apply to such statements. Subsequently, the Supreme Court considered the question left open in *Crawford* and explicitly decided that the Confrontation Clause applies only to testimonial hearsay. *See Davis v. Washington*, 547 U.S. 813, 823–24 (2006).

Here, Petitioner provides no argument as to how the court of appeals' rejection of his argument concerning Dr. Smith's absence and the admission of her report was contrary to, or an unreasonable application of, *Crawford* or other Supreme Court precedent. In *Dorsey v. Cook*, the United States Court of Appeals for the Sixth Circuit addressed a similar situation—a petitioner arguing that his rights under the Confrontation Clause were violated by the admission of testimony from a sexual assault nurse examiner. *See* 677 F. App'x 265, 267 (6th Cir. 2017). The Sixth Circuit stated:

> Here, the state appellate court's denial of Dorsey's confrontation claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The Supreme Court has not addressed whether a statement is testimonial when it is made for the dual purpose of obtaining medical care and providing evidence for later criminal prosecution. Nothing in *Crawford* or subsequent Supreme Court cases interpreting the meaning of "testimonial," including the cases cited by Dorsey, compels the conclusion that statements made to a sexual assault nurse examiner for both medical and legal purposes are testimonial. Because there could be fair-minded disagreement about whether such statements are testimonial, we cannot grant Dorsey habeas relief.

*Id.* (citations omitted).

In light of *Dorsey*, the Court cannot agree with Petitioner that the admission of Dr. Smith's report violated his rights under the Confrontation Clause. Notably, Dr. Smith's report indicated a normal examination of the victim, and indicated that a normal examination could neither confirm nor disprove sexual abuse. In that regard, Dr. Smith's report was favorable to Petitioner. Moreover, although Dr. Smith's report included statements made to her by the victim regarding the abuse, the victim herself testified at trial and was subject to cross-examination.

In his brief supporting his § 2254 petition, Petitioner also appears to attempt to shift his Confrontation Clause argument into an instance of unconstitutional prosecutorial misconduct, suggesting that the prosecutor violated the pretrial agreement to have Dr. Smith deposed by video. (ECF No. 6, PageID.122.) For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

Here, for the same reasons Petitioner has not demonstrated a violation of his Confrontation Clause rights, he has not demonstrated that the prosecutor's conduct rises to the level of a due

26

process violation. Petitioner suggests that the prosecutor deceived the trial court and obtained the stipulation only "through fraudulent conduct, because the stipulation came into existence only after the [p]rosecutor failed to subpoena Dr. Smith for [t]rial and failed to properly secure the [d]octor in time to produce the video deposition." (ECF No. 6, PageID.119.) Petitioner's assertion, however, is solely based upon speculation; Petitioner provides no evidence to support this contention. Notably, Petitioner provides no evidence to suggest that defense counsel was deceived into agreeing to the stipulation.[10] Thus, Petitioner is not entitled to relief with respect to any assertion of prosecutorial misconduct.

In light of the foregoing, Petitioner cannot show that the state court's rejection of his Confrontation Clause claim, and any accompanying prosecutorial misconduct claim, is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to ground II.

## 2.    Ineffective Assistance of Counsel

Petitioner alleges ineffective assistance of trial counsel in ground I (counsel failed to produce evidence to impeach witnesses with prior inconsistent statements, (Pet., ECF No. 1, PageID.17)), and ground III (counsel failed to protect Petitioner's right to confront witnesses and failed to object to the introduction of Dr. Smith's report (*id*., PageID.19)), and ineffective assistance of appellate counsel in ground IV (appellate counsel failed to "federalize" the issues raised in Petitioner's *pro per* supplemental brief on direct appeal and post-appeal counsel failed to "federalize" those issues for Petitioner's post-direct-appeal collateral attack (*id*., PageID.20)).

---

[10] Indeed, in many respects, the doctor's report favored Petitioner's position: the physical examination neither confirmed nor refuted the victim's claims of sexual assault.

### a.    Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme

28

Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

Petitioner may have first raised ground III in his *pro per* supplemental brief during his first direct appeal. He may have also raised grounds I and III in that brief as well. Petitioner reiterated grounds I and III, and raised ground IV for the first time, in his successive Rule 6.502 motion. On direct appeal, the Michigan Supreme Court addressed Petitioner's ineffective assistance claims under the following standard:

> Effective assistance of counsel is presumed, and a defendant claiming ineffective
> assistance is required to overcome a strong presumption that sound trial strategy

> motivated counsel's conduct. *LeBlanc,* 465 Mich. at 578. To establish ineffective assistance of counsel, [Petitioner] must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that but for counsel's error, the result of the proceedings would have been different. *People v. Mack,* 265 Mich. App 122, 129; 695 N.W.2d 342 (2005).

*Malm*, 2014 WL 1320237, at *8. The trial court did not set forth a standard of review in its order denying Petitioner's successive Rule 6.502 motion. (ECF No. 10-16.) Although the court of appeals cited state authority for the standard, the standard applied is identical to *Strickland*. Moreover, the cases cited in *Mack* as the basis for the standard ultimately identify *Strickland* as the source. *See People v. Grant*, 684 N.W.2d 686, 691 (Mich. 2004).

The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from,

30

> "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our
> clearly established precedent. Although the state-court decision may be contrary to
> the federal court's conception of how *Strickland* ought to be applied in that
> particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the Michigan Court of Appeals applied the correct standard,

Petitioner can only overcome the deference afforded state court decisions if the determinations

regarding Petitioner's ineffective assistance claims are unreasonable applications of *Strickland* or

if the state court's resolutions were based on unreasonable determinations of the facts. 28 U.S.C.

2254(d).

### b.    Ground I—Failure to Impeach Witnesses

As his first ground for relief, Petitioner faults trial counsel for failing to produce prior

inconsistent statements with which to impeach certain witnesses. (§ 2254 Pet., ECF No. 1,

PageID.17.) Petitioner avers that he informed counsel on more than one occasion[] that state

witnesses would commit perjured testimony based upon previous documentation." (*Id.*)

Petitioner raised this claim in some form on direct appeal, and the court of appeals

summarily rejected it, stating: "Regarding [Petitioner's] argument that counsel refused to ask the

witnesses many questions [Petitioner] had posed, he does not indicate what counsel should have

asked. We will not engage in conjecture." *Malm*, 2014 WL 1320237, at *8.

Counsel's decisions regarding how to cross-examine and impeach witnesses are matters of

trial strategy, which are entitled to "great respect" by this Court. *See Glenn v. Sowders*, No. 85-

5754, 1986 WL 18475, at *4 (6th Cir. Dec. 8, 1986); *see also Henderson v. Norris*, 118 F.3d 1283,

1287 (8th Cir. 1997) ("Courts generally entrust cross-examination techniques, like other matters

of trial strategy, to the professional discretion of counsel."). While there may be room for

improvement in cross-examination, were that to be "the standard of constitutional effectiveness,

few would be the counsel whose performance [pass] muster." *Henderson*, 118 F.3d at 1287

(quoting *Willis v. United States*, 87 F.3d 1004, 1006 (8th Cir. 1996)). The issue is not whether counsel's approach was the optimal approach; the issue is not even "whether counsel's actions were reasonable[,] *Harrington*, 562 U.S. at 105; the issue is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard[,]" *Id*. In the context of the *Strickland* presumption that counsel's conduct falls within the wide range of professional assistance, where the petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy, Petitioner must show that the challenged action **cannot** be considered sound trial strategy. Anything short of that means that "there is [a] reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner has now rectified his failure on direct appeal to indicate what counsel should have asked by setting forth more detail in his brief supporting his § 2254 petition. First, Petitioner suggests that counsel should have interviewed "maternal family members who had direct knowledge that [the victim] had a pre-existing medical condition to the exposure of bubble bath and [its] role in causing [the victim's] injuries." (ECF No. 6, PageID.104.) According to Petitioner, the victim's maternal great-aunt, Dorothy Knowles, had custody of the victim before Petitioner was awarded custody. (*Id.*) He claims that Ms. Knowles "would have testified that she had informed both Petitioner and [Linda] Cooper on 'several occasions' that [the victim] was allergic to bubble bath[, and] that it causes [the victim's] private parts to become irritated, showing swelling, redness[,] and urinary tract infe[c]tions." (*Id.*, PageID.105.) Petitioner argues that Cooper had "previously bathed [the victim] in bubble bath to give the effect that Petitioner was an unfit father." (*Id.*, PageID.106.) He also contends that counsel should have impeached Cooper with information concerning "Cooper's previous three suicides and another sexual abuse of a minor charge, all involving men from previous relationships of Ms. Cooper." (*Id.*, PageID.107.)

32

First, Petitioner fails to present any evidence corroborating his suggestion that counsel should have cross-examined regarding "Cooper's previous suicides and another sexual abuse of a minor charge." Moreover, Petitioner fails to explain, and the Court fails to discern, how such information would have been admissible as relevant testimony. In any event, the record reflects that defense counsel was able to have Cooper admit that she had previously accused a friend of hers of sexually abusing her oldest daughter. (Trial Tr. II, ECF No. 10-5, PageID.1077–1078.)

With respect to Petitioner's concerns regarding bubble bath, on direct examination, the prosecutor asked Cooper if she used bubble bath when bathing the victim. (*Id.*, PageID.1058.) This came up because on cross-examination of the victim, defense counsel asked if she had been allergic to bubble bath when she was little, and the victim did not remember. (*Id.*, PageID.955.) Cooper testified that she did use bubble bath, and that she was not aware that bubble bath ever caused the victim to experience a rash. (*Id.*) On cross-examination, defense counsel had Cooper admit that it never crossed her mind to ask the victim whether she was being inappropriately touched by her father because there were never any signs that she was being touched. (*Id.*, PageID.1064–1065.) Moreover, on cross-examination, the following exchange occurred between Cooper and defense counsel:

Q    Now, Ms. Cooper, did—did my client ever tell you that [the victim] was allergic to bubble bath?

A    I believe he did make that statement.

Q    Okay. And did—in the time that you were bathing her, was she in bubble bath?

A    Yes.

Q    Okay.

(*Id.*, PageID.1079–1080.) Thus, contrary to Petitioner's argument, defense counsel did cross-examine Cooper with respect to the fact that she had been told that the victim was allergic to bubble

bath. Petitioner fails to explain, and the Court fails to discern, how cross-examining Cooper with respect to any statements by Ms. Knowles concerning the victim's alleged allergy to bubble bath would have changed Cooper's responses in any way, or would have changed the outcome of his trial, in light of the overwhelming evidence against him.

Next, Petitioner faults defense counsel for not impeaching Lisa Kibby with information that she had "provided numerous false statements in prior court proceedings, police reports[,] and in several Family Independence Agency Reports and with multiple drug rehabilitation agencies and would more than likely continue this behavior during trial." (ECF No. 6, PageID.107.) For example, Petitioner suggests that Kibby lied when she testified that her drug abuse started when the victim was taken out of her home, as Petitioner argues that Kibby's drug use started 10 years before the removal. (*Id.*, PageID.108.) He also suggests that counsel should have impeached Kibby's testimony with testimony from Cindy August, a Child Welfare Worker, who could have revealed Kibby's "inherent predilection to create false statements, her continued drug abuse, and extended sexual abuse within the Kibby family." (*Id.*)

It appears that Petitioner wanted counsel to impeach Kibby this way because of her testimony that Petitioner would force her to have sexual intercourse with him if she wanted to see the victim. (Trial Tr. II, ECF No. 10-5, PageID.1017.) On cross-examination, defense counsel elicited information regarding how Kibby barely saw the victim when she was either with Petitioner or with Linda Cooper. He also elicited information regarding Kibby's drug use. Thus, the record reflects that counsel effectively cross-examined Kibby based upon her sparse interactions with Petitioner and the victim. Petitioner merely speculates that impeaching Kibby regarding any false statements would have completely changed the outcome of his criminal

34

proceedings. Petitioner's choice to point out a strategy that might have been superior simply does not suffice to demonstrate ineffective assistance of counsel.

Finally, Petitioner faults counsel for not presenting "documentary evidence that would have cast serious doubt on [the victim's] credibility. (ECF No. 6, PageID.109.) Petitioner first suggests that counsel should have obtained two 2012 Leelanau County Sheriff's reports. (*Id.*, PageID.110.) According to those reports, the victim claimed to have left a friend's residence because Petitioner had been drinking and she was worried about her safety, but Deputies Wright and Robinson determined that claim was untrue because Petitioner was "completely sober." (*Id.*) The victim had also claimed that Petitioner's home "was a mess [and] that there was no food or heat." (*Id.*, PageID.111.) However, a deputy determined that was false because "the house was clean and warm and there was plenty of food visible." (*Id.*) He suggests that these reports would have demonstrated that the victim "had a tendency to make up stories against her father." (*Id.*, PageID.111.)

Petitioner also suggests that counsel should have introduced a Child Protective Service Investigation Report that revealed the victim "had previously informed CPS that she loves living at her dad's house and denied being afraid of him or unhappy living with him." (*Id.*) The victim "stated that she does not have her own room and denied that she sleeps with her father. [The victim] also denied that anyone had 'EVER' touched her inappropriately." (*Id.*)

The record reflects that defense counsel thoroughly cross-examined the victim during Petitioner's trial. Notably, defense counsel mentioned that since 2000, the victim had never raised any allegations of abuse during interviews with the Family Independence Agency and Child Protective Services, and the victim admitted that was true. (Trial Tr. II, ECF No. 10-5, PageID.955.) She also admitted to never telling Linda Cooper about any of the abuse when Cooper

was her guardian. (*Id.*, PageID.957, 958.) Moreover, defense counsel did raise the incident that led to the Leelanau County Sheriff's reports during cross-examination. (*Id.*, PageID.965–968.) Throughout cross-examination, defense counsel successfully had the victim admit that there were several occasions during which she fought with her father and that she never told anyone about the abuse she was experiencing. He also had the victim admit that Cooper had told her that she was with Cooper because Petitioner had done "things to [her]." (*Id.*, PageID.1008.)

Again, Petitioner's suggestion that the outcome of his trial would have been drastically different had counsel impeached the victim with the documents in question is sheer speculation. Counsel cast doubt on the victim's credibility by having her repeatedly admit that she never told anyone about the abuse, including Child Protective Services. He also elicited information regarding the victim's numerous confrontations with Petitioner, suggesting that such confrontations could have led her to fabricate the allegations of abuse. Again, Petitioner's choice to point out a strategy that might or might not have been superior simply does not suffice to demonstrate ineffective assistance of counsel.

In sum, for the reasons discussed above, Petitioner fails to demonstrate that the state court's rejection of this claim of ineffective assistance is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief with respect to ground I.

### 3.    Ground III—Failure to Protect Confrontation Right and Object to Admission of Report

In ground III, Petitioner faults counsel for "fail[ing] to protect [Petitioner's] Sixth Amendment right to confront witnesses and where counsel failed to object to the introduction of Dr. Smith's report." (§ 2254 Pet., ECF No. 1, PageID.19.) In his brief, Petitioner appears to suggest that counsel should have objected to the denial of an adjournment that would have allowed at least two individuals to appear to testify on Petitioner's behalf. (ECF No. 6, PageID.126.) He also

reiterates his assertion that the admission of Dr. Smith's report in lieu of her testimony violated his Confrontation Clause rights.

Petitioner raised his ineffective assistance claim regarding Dr. Smith's report on direct appeal, and the court of appeals summarily rejected it, stating:

> [Petitioner] cannot overcome the strong presumption that sound strategy motivated counsel's decision to stipulate to the admission of the medical report rather than require live testimony from the doctor. The report contained information that was favorable to [Petitioner], and defense counsel used the medical report to argue that the doctor's findings were, in part, inconsistent with the victim's allegations.

*Malm*, 2014 WL 1320237, at *8. For the reasons discussed *supra* in Part III.B.1, the Court concludes that the court of appeals' determination is entirely consistent with *Strickland*. Petitioner's Confrontation Clause and due process rights were not violated by the admission of Dr. Smith's report, and any argument by counsel otherwise would have been futile. "[O]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *see also Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim.").

With respect to the claim that counsel failed to ensure that certain witnesses could appear to testify on Petitioner's behalf, Petitioner contends that "Ted Moore was prepared to testify that [the victim] had never mentioned anything to [him and his son] about alleged sexual abuse between her and her father." (ECF No. 6, PageID.126.) According to Petitioner, Ted Moore was the father of the victim's best friend. (*Id.*) He suggests that Moore would have testified that the victim "had a history of lying to get what she wanted and would often run away when she didn't get her way." (*Id.*)

Counsel subpoenaed the Moores to testify at Petitioner's trial. (July 12, 2012, Mot. Hr'g Tr., ECF No. 10-3, PageID.758–759, 763–764, 767–770.) And when the Moores identified a conflict, counsel promptly requested an adjournment of trial. (*Id.*, PageID.764 (Petitioner's

counsel informed the trial court that he "didn't know [about the conflict because] Mr. Moore hadn't told [counsel] until he left a message . . . today").) The Moores told Petitioner's counsel that they would be attending a pre-scheduled out-of-state all-star baseball playoff for their son. (ECF No. 6, PageID.126; Pet'r's Standard 4 Br., ECF No. 10-24, PageID.1736.)

Petitioner and Ted Moore had known each other for over a decade. (Aff. of Ted Moore, ECF No. 6-2, PageID.188.) Petitioner describes Mr. Moore's commitment to the baseball playoff as follows: "Mr. Moore['] mission in life was to fulfill his son Travis'[s] dream of becoming a professional baseball player. In Mr. Moore's eyes, missing an out-of-state championship baseball game was not an option." (Pet'r's, ECF No. 6, PageID.127.)

Petitioner also argues that Angela Steinhouse, the mother of the victim's "new best friend," "would have testified that her daughter has been lying since she was able to talk and is now staying with [the victim] at [the victim's] gran[d]parent's house because the tension at her home were high." (ECF No. 6, PageID.128.) Petitioner asserts further that Steinhouse would have testified that her daughter has "a history of hitting and cutting herself and has been known to throw herself on the floor if her step-dad comes near her and that a recent referral had come into the Department of Human Services regarding [her daughter] as well." (*Id.*) Petitioner suggests that Steinhouse would have testified that she would not put it past her daughter and the victim to concoct a story so that they could live somewhere and not have to listen to parental rules. (*Id.*)

Petitioner raised this claim on direct appeal, and the court of appeals summarily rejected it, noting that Petitioner's claim amounted to "nothing more than speculation" because he had "provided no affidavit or anything else from any of these people to indicate that they would have testified as [Petitioner] asserts." *Malm*, 2014 WL 1320237, at *7. Defendant attempts to rectify

this by attaching to his brief an affidavit from Ted Moore, dated May 30, 2015. (ECF No. 6-2, PageID.188.)

It is well established that a criminal defendant has the right to "a meaningful opportunity to present a defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984); *see also Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). As the Supreme Court has explained:

> The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact. The right to offer testimony is thus grounded in the Sixth Amendment even though it is not expressly described in so many words:
>
> > "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

*Taylor v. Illinois*, 484 U.S. 400, 409 (1988) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)).

The right to present a defense, however, is not absolute. *Id.* Instead, the *Taylor* Court noted that the right to present a defense is subject to "rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case." *Id.* at 411. Otherwise, the "trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony." *Id.*

While the *Taylor* Court did not set forth a comprehensive standard to guide these types of claims, it did set forth the interests that would often arise and would need to be considered:

> [A] trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of

reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.

A trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial. If that explanation reveals that the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness' testimony.

The simplicity of compliance with the discovery rule is also relevant. As we have noted, the Compulsory Process Clause cannot be invoked without the prior planning and affirmative conduct of the defendant. Lawyers are accustomed to meeting deadlines. Routine preparation involves location and interrogation of potential witnesses and the serving of subpoenas on those whose testimony will be offered at trial. The burden of identifying them in advance of trial adds little to these routine demands of trial preparation.

*Id.* at 414–16 (footnotes and citations omitted).

The record reflects that at the July 17, 2012, hearing, defense counsel requested a continuance on the basis that several witnesses would not be available for when trial was scheduled. (ECF No. 10-3, PageID.756.) Counsel mentioned Ted and Travis Moore, and indicated that they would be in Indiana for a baseball tournament. (*Id.*, PageID.757–759.) At no time did counsel mention Angela Steinhouse. Petitioner fails to present any evidence suggesting that he even indicated to counsel that Steinhouse could be a potential defense witness. Moreover, Petitioner has offered nothing to support a conclusion that a failure to present Steinhouse's testimony resulted in prejudice to his defense. *See Tinsley v. Million,* 399 F.3d 796, 810 (6th Cir. 2005) (affirming denial of an ineffective assistance claim based on counsel's failure to call witnesses where a petitioner did not "introduce [] affidavits or any other evidence establishing what they would have said"); *United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir. 1991) ("[T]he testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit; [a] defendant cannot simply state that the testimony would have been

favorable, [as] self-serving speculation will not sustain an ineffective assistance claim.") (footnote omitted)). Thus, the Court cannot agree with Petitioner that counsel was ineffective for failing to ensure Steinhouse's appearance at trial.

In the affidavit from Ted Moore that Petitioner has provided, Moore states that if he were called to testify, he would have testified to the following: (1) he has known Petitioner for over a decade; (2) the victim spent a lot of time at the Moores' house; (3) the victim would often go on trips with Moore and his son; (4) the Moores were essentially the victim's "surrogate family"; (5) the victim had a history of running away when she did not get her way; (6) the victim never mentioned anything to him about Petitioner allegedly abusing her; and (7) the victim "would have occasion to lie in order to get what she wants." (ECF No. 6-2, PageID.188.)

Petitioner has not demonstrated that this testimony would have changed the outcome of his trial. Every statement in the affidavit could be true and it would not foreclose the truth of the victim's testimony at trial, or even challenge it in any specific way, particularly in light of the overwhelming testimony from the prosecution's witnesses. Notably, Moore waited until May 30, 2015—almost 3 years after Petitioner was convicted—to prepare and sign this affidavit. If Moore believed that Petitioner "had been wrongly convicted and was languishing in prison, why wait?" *Ashmon v. Davis*, 508 F. App'x 486, 488 (6th Cir. 2012). This affidavit, which was created well after trial, is simply not sufficiently reliable to suggest that Moore's testimony would have led to an acquittal. *See Milton v. Sec'y, Dep't of Corr.*, 347 F. App'x at 528, 531–32 (11th Cir. 2009).

Furthermore, the record reflects that the trial court denied the continuance after the court concluded that the proposed testimony from the Moores was not "particularly relevant." (ECF No. 10-3, PageID.773.) The trial court noted that testimony regarding the victim's behavior would be "consistent with lots of people who are growing up and actually may be more consistent with

41

sexual abuse occurring than it not occurring, but [its] relevance is marginal and may be even supportive of the People." (*Id.*, PageID.774.) This Court agrees. As discussed *supra*, counsel effectively cross-examined the victim in an attempt to suggest that she was fabricating the allegations against Petitioner. Any testimony from Ted Moore would simply have been much less direct and cumulative of that cross-examination. In any event, the record clearly indicates that defense counsel did as much as he could to protect Petitioner's right to have Moore testify on his behalf at trial, but was ultimately unsuccessful when the trial court denied the motion to adjourn trial. (*Id.*)

In sum, for the reasons set forth above, Petitioner has not demonstrated that the state courts' rejection of this claim is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief with respect to ground III.

### 4.    Ground IV—Ineffective Assistance of Appellate Counsel

As his fourth and final ground for relief, Petitioner contends that appellate counsel rendered ineffective assistance by "omitt[ing] significant and obvious issues that were clearly stronger than the issues counsel presented." (§ 2254 Pet., ECF No. 1, PageID.20.) Petitioner argues that he asked appellate counsel to "federalize his [*pro per* supplemental brief] that related to these issues[, and that] [c]ounsel's decision to leave these burdens to the Petitioner was an unreasonable one." (*Id.*) Petitioner also appears to suggest that the attorney who represented him for his first Rule 6.500 motion was ineffective for failing to raise certain claims for relief. (*Id.*)

In his brief supporting his § 2254 petition, Petitioner essentially faults counsel for failing to raise the claims that Petitioner ultimately raised in his *pro per* supplemental brief. (ECF No. 6, PageID.139.) Petitioner faults appellate counsel for not conducting a thorough investigation, failing to meet with Petitioner to review potential issues, and failing to obtain pretrial hearing transcripts. (*Id.*, PageID.139–140.) He also faults counsel who represented him on his first Rule

6.500 motion for failing to meet with him to discuss possible issues and failing to produce a successful Rule 6.500 motion. (*Id.*, PageID.141–142.)

First, Petitioner's claims regarding counsel who represented him on his first Rule 6.500 motion are not cognizable on federal habeas review. "There is no constitutional right to an attorney in state post-conviction proceedings[; c]onsequently,, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. at 752 (citations omitted). Accordingly, Petitioner is not entitled to relief on such claims.

Moreover, Petitioner has not demonstrated that appellate counsel was ineffective for not raising the claims Petitioner raised in his *pro per* supplemental brief in the counseled brief on direct appeal. First, even though counsel did not raise them, Petitioner was able to present them himself in his *pro per* brief, and the court of appeals considered them in its opinion. *See Malm*, 2014 WL 1320237, at *6–8. Petitioner does not explain, and the Court does not discern, how counsel "federalizing" these claims would have led to a different result on direct appeal. Moreover, as discussed *supra*, Petitioner's underlying claims lack merit. Thus, to the extent Petitioner faults appellate counsel for not raising those claims, "appellate counsel's failure to raise [those] claim[s] on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *see also Greer*, 264 F.3d at 676 ("If trial counsel performed adequately, our inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.").

In sum, for the reasons set forth above, Petitioner is not entitled to relief with respect to ground IV.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a

43

"substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### **Conclusion**

The Court will enter a Judgment denying the petition, as well as an Order denying a certificate of appealability.

Dated:    January 21, 2025                    /s/ Jane M. Beckering
                                              Jane M. Beckering
                                              United States District Judge